```
           IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA
```

DANIEL W. EARLS,              )
                              )
        Plaintiff,             )
                              )
v.                             )      Case No. CIV-14-188-RAW-KEW
                              )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                              )
        Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Daniel W. Earls (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on July 15, 1973 and was 39 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade. Claimant worked in the past as a painter and automobile mechanic. Claimant alleges an inability to work beginning January 1, 2010 due to limitations resulting from schizoaffective disorder and anxiety disorder.

**Procedural History**

On August 4, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 19, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") Doug Gabbard, II by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On March 14, 2013, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on March 12, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform a full range of work at all exertional levels.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to

perform a proper credibility analysis; (2) failing to reach an appropriate RFC; and (3) failing to fully develop the record.

## Credibility Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of right ankle injury, schizoaffective disorder, anxiety disorder NOS, and polysubstance abuse. (Tr. 14). The ALJ also found Claimant retained the RFC to perform a full range of work at all exertional levels. The ALJ also determined, however, that Claimant's ability was limited by the non-exertional restrictions of performing unskilled work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time where supervision was simple, direct, and concrete, interpersonal contact with supervisors and co-workers was incidental to the work performed (e.g. - assembly work), and that he have no contact with the general public. (Tr. 17). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of garment bagger and dishwasher, both of which he testified existed in sufficient numbers in the regional and national economies. (Tr. 27). Based upon these findings, the ALJ concluded Claimant was not under a disability from January 1, 2010 through the date of the decision. Id.

Claimant contends the ALJ failed to properly evaluate his

5

credibility. The ALJ recited Claimant's testimony from the hearing regarding his onset of schizophrenia. He also set forth Claimant's testimony concerning his activities of daily living. (Tr. 18-19). Claimant testified that he cannot concentrate or put things in the right order and how to make the right decisions. He stated that he was diagnosed as a schizophrenic. (Tr. 336). He was taught by his father to do automotive paint and body work and he considered himself to be good at it. (Tr. 335, 337). But he has trouble concentrating in order to assist his father so he basically sweeps up and tries to do body work. (Tr. 337). He could not afford his medication so he had been off of it for about a year and a half. (Tr. 339, 342). Claimant visits with his wife and father as he has trouble trying to talk to other people. (Tr. 340). He attended his daughter's violin recital and church. (Tr. 340-41). His medication kept changing but he did not believe he had been stabilized. (Tr. 342). He states that he experiences very bad anxiety and has a lot of trouble sleeping. (Tr. 342).

On August 8, 2003, Claimant was admitted to the hospital for attempted suicide. He was diagnosed with chronic paranoid schizophrenia. His GAF was estimated at 20 upon his admission, 35 on discharge, and 45 as the highest over the past year. (Tr. 303). At discharge, Claimant stated he was no longer having suicidal

thoughts and he was continuing to improve. His mood improved with no evidence of psychosis and no suicidal thinking. (Tr. 304).

Claimant had a history of arrests and drug abuse. (Tr. 214, 252, 256). He reported memory problems from an early age but obtained a GED and assisted his father in his work. Id. Medical treatment records in 2009 indicated Claimant was "doing good, no problems." His mood and affect were good. He continued on medication. (Tr. 211-15). By 2011, however, Claimant reported he could not eat, think, sleep and sees things that were not there. He "believed there is something very wrong with my brain." (Tr. 299). Some indication in the medical record supports a conclusion that Claimant was not taking his medication. (Tr. 296).

In an assessment from November of 2012, Claimant had an anxious mood with an appropriate affect. He did not report any hallucinations, had normal attention/concentration, had intact memory functions with average intellectual ability and normal abstracting ability. His insight and judgment were considered poor. (Tr. 311).

On November 23, 2010, Claimant was evaluated by Dr. Cynthia Kampschaefer. She determined Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and

7

markedly limited in the area of the ability to interact appropriately with the general public. (Tr. 228-29). She found Claimant could perform simple and some complex tasks, could relate to others on a superficial work basis, could adapt to a work situation, and should be limited in working with the general public. (Tr. 230).

On August 23, 2011, Claimant was evaluated by Dr. Diane Brandmiller. She diagnosed Claimant with schizoaffective disorder, generalized anxiety disorder with a GAF of 40-49. (Tr. 258). She found Claimant's short term memory to be mildly impaired and his performance improved on a memory task with a shorter time delay. Concentration appeared mildly impaired, and performance on a reverse counting task improved with a simple as opposed to complex task. Abstract thinking appeared intact. Expressive and receptive language skills appeared intact. He appeared to Dr. Brandmiller to be able to understand and carry out some simple instructions, although memory and concentration difficulties as well as emotional and psychotic symptoms would likely impact task performance. He would need assistance managing funds. (Tr. 258-59).

On September 19, 2011, Claimant was evaluated by Dr. Kevin Ragsdale. He found Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions, the

8

ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and the ability to respond appropriately to changes in the work setting. (Tr. 284-85).

On December 13, 2011, Dr. Steven Delia, Claimant's treating mental health physician, authored a medical source statement. He determined Claimant was markedly limited in all functional areas. (Tr. 290-91). He noted Claimant had a ten year history of paranoid schizophrenia, depression, anxiety, three suicide attempts, audio and visual hallucinations for at least the past 10 years which was not adequately controlled with medication. (Tr. 291). Dr. Delia found Claimant suffered from "treatment resistant symptoms" such as hearing voices, thoughts being put in his head - controlling him and making him do things, and special messages coming to him from

the TV/radio. He concluded that "[w]ith this kind of 10 year h/o symptoms, and treatment resistant; good prognosis with return to employment is very doubtful." (Tr. 292).

On the issue of credibility, the ALJ found he inconsistently reported his hallucinations and medical providers had found his thought processes were intact after six months of medication. He reported his medications did not help and were being constantly adjusted but the medical record indicates Claimant's condition improved so long as he was taking his medication. He reported at one time that he quit working because of his mental condition but told an examiner that his father retired. He reported difficulties with memory but completed his GED and worked in a skilled occupation. Formal testing did not support his level of claimed limitation. He was evasive regarding his substance abuse. (Tr. 25).

Claimant contends these findings are insufficient under the case authority and regulations. He asserts that the very condition of schizophrenia makes the sufferer an unreliable historian. While this may be a consideration in the overall credibility assessment, nothing in the record would indicate that Claimant is other than mildly impaired in his memory functions. The inconsistencies cited by the ALJ go beyond requiring Claimant's historical recollection.

10

The medical record indicates improvement when Claimant maintained taking his medications. He was able to complete his educational process.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds the ALJ's conclusions in rejecting Claimant's credibility to be supported by the medical record.

**RFC Determination**

Claimant essentially argues that a more restrictive RFC should have been found by the ALJ but that his evaluation of Claimant's treating physician's opinion was flawed. The ALJ gave Dr. Delia's opinion "no weight" because "it is inconsistent with the medical evidence." He based this conclusion upon Claimant's inconsistent reporting of hallucinations. Additionally, when it was reported, the ALJ asserts it was not of the severity found by Dr. Delia. He further stated that Dr. Delia's treatment notes indicated Claimant only reported that he saw and heard things that were not there. Other treatment notes indicated Claimant improved with medication contradicting Dr. Delia's comment that Claimant had a 10 year

12

history of mental problems which was not adequately stabilized with medication. (Tr. 24).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion.  20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted).  Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight."  Id.  "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."  Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ formulated his rejection bases of Dr. Delia's opinion by selectively reviewing the treatment notes.  Dr. Delia found in December of 2011 that Claimant was "zombiefied" by the medication and should not work.  In November of 2011, Claimant indicated anxiety, that he could not afford to come to an appointment, and that he needed to restart some medications. (Tr. 294).  Claimant was positive for depression, increased anxiety, and audio-visual hallucinations. (Tr. 295).  In March of 2011, Claimant was not on

14

any medications and was in need of a psychiatric evaluation. He still experienced depression, increased anxiety and audio-hallucinations. (Tr. 296). Moreover, the medical records from other treatment facilities cited by the ALJ are limited and reflect a varied effectiveness to treatment and his treatment was ongoing. (Tr. 317). Much of this treatment occurred prior to Dr. Delia's involvement with Claimant. (Tr. 303-08).

The complete rejection of Dr. Delia's opinion is not supported by the medical record and reasoning cited by the ALJ. Since he represented the primary mental health professional rendering treatment to Claimant, his opinion should have been considered paramount to the remainder of the record. On remand, the ALJ shall reconsider the weight (or complete lack thereof) he afforded Dr. Delia's opinion and consider carefully his functional limitations under the Watkins factors.

Claimant also references the ALJ's failure to consider the lowered GAF scores in his various evaluations. The scores have ranged from 20 to 49. (Tr. 303-05, 258). Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of

15

functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Nevertheless, a GAF score may be of considerable help to the

ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). In this case, the ALJ should at least acknowledge the GAF score as a part of the analysis of Claimant's mental condition and consider whether the low GAF score in combination with other limitations indicates a more serious mental restriction.

## Duty to Develop the Record

Claimant contends the ALJ should have recontacted Dr. Delia for further information if he had questions regarding his opinion. This Court is not convinced the ALJ had a duty to contact Dr. Delia as he did not find any particular conflict within his opinion. If on remand, however, the ALJ determines that clarification of Dr. Delia's opinion is necessary in order to properly adjudicate if his opinion is entitled to more than no weight, he should do so.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social

17

Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 20th day of July, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE